UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIZZIE JAMES,

     Plaintiff,

v.                                 Case No.:  2:19-cv-869-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

**OPINION AND ORDER**

Plaintiff Kizzie James filed a Complaint on December 6, 2019.  (Doc. 1).
Plaintiff seeks judicial review of the final decision of the Commissioner of the Social
Security Administration ("SSA") denying her claim for a period of disability,
disability insurance benefits, and supplemental security income.  The Commissioner
filed the transcript of the administrative proceedings (hereinafter referred to as "Tr."
followed by the appropriate page number), and the parties filed a joint memorandum
detailing their respective positions.  (Doc. 24).  For the reasons set forth herein, the
decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social
Security Act, 42 U.S.C. § 405(g).

## I.   Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental impairment that can be
expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 – 404.1511, 416.905 – 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.    Procedural History

Plaintiff filed a claim for a period of disability and disability insurance benefits on June 7, 2016.  (Tr. at 18).[1]  Plaintiff alleged an amended disability onset date of April 22, 2016.  (*Id.* at 46).  Plaintiff's claim was denied at the initial level on March 17, 2017 and upon reconsideration on March 18, 2017.  (*Id.* at 246, 249, 254, 259).  Plaintiff requested an administrative hearing before an Administrative Law Judge ("ALJ") and ALJ Eric Anschuetz held that hearing on April 19, 2018.  (*Id.* at 37-114).  The ALJ issued an unfavorable decision on October 24, 2018.  (*Id.* at 15).  On October 8, 2019, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1).  Plaintiff then filed her Complaint with this Court on December 6, 2019, and the

---

[1] The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations, however, do not apply in Plaintiff's case because Plaintiff filed her claim before March 27, 2017.

parties consented to proceed before a United States Magistrate Judge for all purposes. (Docs. 1, 13, 16). The matter is, therefore, ripe for the Court's review.

## III.      Summary of the Administrative Law Judge's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (Tr. at 21). At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since April 22, 2016, the amended alleged onset date (20 [C.F.R. §§] 404.1571 *et seq.*, and 416.971 *et seq.*)." (*Id.*). The ALJ, at step two, found that Plaintiff has the following severe impairments: "morbid obesity, degenerative joint disease of the bilateral knees, degenerative joint disease of the right ankle with minimum to mild pain, degenerative disc disease of the lumbar spine, hypertension, and lymphoma-nodular

lymphocyte, predominate Hodgkin lymphoma (20 [C.F.R. §] 404.1520(c) and

416.920(c)).” (*Id.*). At step three, the ALJ determined that Plaintiff “does not have

an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 [C.F.R. §] Part 404, Subpart P,

Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925

and 416.926).” (*Id.* at 22).

The ALJ found that Plaintiff has the residual functional capacity (“RFC”):

> [T]o perform light work as defined in 20 [C.F.R. §§]
> 404.1567(b) and 416.967(b) except the claimant is limited to
> lift and carrying 10 pounds; standing and/or walking for
> two hours in an eight hour day; sitting for six hours in an
> eight hour day; never climbing ladders, ropes, or scaffolds,
> but occasionally climbing ramps and stairs; occasional
> balancing, stooping, kneeling, and crawling. She can only
> squat up to 30 percent of the [d]ay. She has no fingering or
> manipulative limitations. She should avoid concentrated
> exposure to environmental extremes of heat, cold,
> vibrations, and humidity. She must avoid workplace
> hazards such as unprotected heights and unshielded rotary
> machines. She is also limited to performing simple, routine,
> and repetitive tasks. She can have frequent interaction with
> supervisors, coworkers, and the public. She must be
> permitted to alternate between sitting and standing while
> remaining at her workstation.

(*Id.* at 23). At step four, the ALJ determined Plaintiff “is unable to perform any past

relevant work (20 [C.F.R. §§] 404.1565 and 416.965).” (*Id.* at 27).

At step five, considering Plaintiff’s age, education, work experience, and RFC,

the ALJ determined that “there are jobs that exist in significant numbers in the

national economy that the [Plaintiff] can perform. (20 [C.F.R. §§] 404.1569,

404.1569(a), 416.969, and 416.969(a)).” (*Id.* at 28). Specifically, the ALJ, relying on

Vocational Expert ("VE") testimony, found that Plaintiff could perform the following jobs that exist in significant numbers in the national economy:  Addressing Clerk (DOT# 209.587-010); Call Out Operator (DOT# 237.367-014); and Document Preparer (DOT# 249.587-018).  (*Id.* at 29).  For these reasons, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 22, 2016, through the date of this decision (20 [C.F.R. §§] 404.1520(g) and 416.920(g))."  (*Id.*).

## IV.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates

against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## V.     Analysis

On appeal, Plaintiff raises six issues. As stated by the parties, the issues are:

1.     Whether the ALJ properly relied on a medical opinion not included in the Administrative Record and which related to a different time period and different impairments;

2.     Whether the ALJ's [RFC] finding was supported by substantial evidence;

3.     Whether remand is merited due to an apparent conflict between the mental [RFC] limitations and the reasoning level requirements of the jobs cited;

4.     Whether the ALJ properly determined the mental [RFC] limitations without following the special technique mandated by 20 C.F.R. § 404.1520a or otherwise providing a sufficient explanation in support of the findings;

5.     Whether the ALJ's finding that Plaintiff's Hodgkin Lymphoma did not meet or medically equal criteria of Listing 13.05(B) is supported by substantial evidence; and

6.     Whether the ALJ's rejection of Plaintiff's alleged symptoms and limitations is supported by substantial evidence.

(Doc. 26 at 19, 24, 30-31, 39, 48, 57).[2]   The Court will address each issue separately below by first summarizing the parties' arguments, then reciting the applicable legal standards, before addressing the ALJ's opinion.

### A.    The ALJ did not err in relying on a medical opinion not included in the Administrative Record, relating to a different time period and different impairments.

#### 1.    The Parties' Arguments

Plaintiff broadly argues that the ALJ erroneously relied on the opinion of the state agency medical consultant in a prior decision that predates the current alleged disability onset date. (*See* Doc. 24 at 19).   Plaintiff contends her cancer was not an issue during the time of this medical opinion, and that substantially relying on evidence not included in the record warrants remand. (*Id.* at 19-20).

Defendant responds that even if the ALJ erred by relying on this opinion, it was a harmless error. (*Id.* at 20).   Defendant argues that the ALJ's RFC finding was either consistent with or more limiting than the prior medical opinion. (*Id.* (citing Tr. at 23, 160)).   Further, Defendant contends that the ALJ did not need to rely on a doctor's opinion for an RFC finding at all, and that this Court should affirm as long as substantial evidence supports that RFC finding even when the medical consultant's opinion is not considered. (*Id.* (citations omitted)).   Additionally,

---

[2] Defendant objects to the framing of the fourth and fifth issues. (*See* Doc. 24 at 39 n.22, 48 n.24).   As noted below, the Court agrees with Defendant's argument against the framing of the fifth issue.

Defendant asserts that substantial evidence supports the ALJ's decision and provides the record evidence in support of its argument.  (*Id.* at 22-24).

In her reply, Plaintiff reiterates that Defendant does not deny that the ALJ relied on a medical opinion not included in the administrative record.  (*Id.* at 24).  As a result, Plaintiff argues that the Court would be unable to determine whether the RFC's finding is consistent with or more limiting than the physician's opinion.  (*Id.*).  Thus, Plaintiff requests that the Court remand for the provision of a complete record to Plaintiff, encompassing all the evidence relied on by the ALJ, including the medical opinion at issue.  (*Id.*).

## 2.    Applicable Legal Standards

An RFC is the most a claimant can still do despite the physical and mental limitations of her impairments.  *See* 20 C.F.R. § 416.945(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  The ALJ is responsible for determining the claimant's RFC, and he must consider the claimant's ability to "meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 416.946(c).  The ALJ must consider all the claimant's medically determinable impairments, even those not designated as severe.  20 C.F.R. § 416.945(a)(2).

The Social Security regulations define medical opinions as statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis, and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions.  20 C.F.R. § 404.1527(a)(2).  While an ALJ must give a treating

physician special deference, there is no such requirement for non-treating sources. *Barnhart*, 357 F.3d at 1240-41.  Instead, the ALJ's RFC determination must merely be supported by substantial evidence.  42 U.S.C. § 405(g).  An incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings.  *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *see also Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (holding that remand is not warranted unless an error shows "unfairness" or "clear prejudice").

### 3.    Analysis

Here, the Court finds that, to the extent the ALJ may have relied on the past medical opinion not part of the current record, the error is harmless.  As an initial matter, it is unclear whether the ALJ himself had the medical opinion at the time he rendered his decision.  The ALJ merely states—word for word—the single sentence summarizing the medical opinion in the prior decision and cites the prior decision as the source of this information, not the medical opinion itself.  (*Compare* Tr. at 26 *with* Tr. at 160).  The ALJ followed that by stating, "[w]hile the evidence of record supports greater standing limitations and the State agency consultant was a non-examining source, the [2012] opinion is consistent with the claimant's good response to treatment and medication."  (*Id.*).

Moreover, if the ALJ truly gave considerable weight to the 2012 medical opinion, he would have stated that the Plaintiff could stand/walk for four hours a

day as the medical opinion recommended.  (*See id*. at 160).  Nevertheless, the ALJ found that the plaintiff could stand/walk for two hours a day, consistent with the recommendation of the state medical consultant in 2017.  (*Id.* at 23, 189).

The reference to the medical opinion aside, the ALJ listed substantial evidence contained in the record to support his findings.  The ALJ detailed the 2017 examination with Dr. Michael Rosenberg, which found Plaintiff has "mild to moderate left knee pain, minimal to mild right ankle pain, and mild back pain" and that Plaintiff "reported she was doing well with pain medication."  (*Id*. at 26).  The ALJ gave significant weight to Dr. Rosenberg's opinion, which showed Plaintiff had "limited range of motion of the lumbar spine, hips, and knees bilaterally, pain with range of motion of the left knee, right ankle, and lumbosacral spine, and swelling in the right ankle."  (*Id.* at 26-27).  The Plaintiff reported using a walker, but it was not prescribed by a doctor and neither used at the examination with Dr. Rosenberg nor the hearing.  (*Id.* at 25).  The ALJ further discussed that Plaintiff had "stable joints, negative straight leg raising bilaterally, full strength in the upper and lower extremities, and no sensory deficits" and that medical imaging showed "mild and minimal degenerative changes."  (*Id.* at 27).

The ALJ followed that by describing the evidence from Plaintiff's treating physician, Dr. Jason Nemitz.  (*Id.*).  The ALJ gave great weight to this evidence because Dr. Nemitz "was a treating physician and his opinion is substantiated by his own treatment notes and is not inconsistent with the other medical evidence of record."  (*Id.*).  Dr. Neimitz's reports showed that Plaintiff had degenerative changes

of the midfoot and ankle, but normal range of motion, full motor strength in all extremities, intact sensation, negative straight leg raising, and normal gait.  (*Id.*).

The ALJ also noted Plaintiff's self-reporting of daily living, which included the ability to manage her personal care with occasional help, cooking once a week, cleaning counters, grocery shopping twice a month, and driving her daughter to the bus stop weekly.  (*Id.*).

For these reasons, the Court finds the ALJ's findings of fact were supported by substantial evidence.  *See Richardson*, 402 U.S. at 390; 42 U.S.C. § 405(g).  Thus, even if the ALJ erred in relying on the 2012 medical opinion not contained in the record, the detailed evidence supporting the ALJ's findings and his decision to substantially follow the recommended limitations contained in the 2017 medical opinion's make this, if anything, a harmless error.  (Tr. at 23, 189).  Thus, remand is not appropriate. *See Denomme*, 518 F. App'x at 877.

## B. The ALJ's RFC was supported by substantial evidence.

### 1. The Parties' Arguments

Plaintiff next argues that the ALJ's RFC determination is not supported by the medical opinion evidence contained in the record.  (Doc. 24 at 24).  Specifically, Plaintiff contends that assigning the medical opinions of Drs. Minal Krishnamurthy and Thomas Bixler only "partial weight" was not enough to constitutes substantial support for the findings.[3]  (*Id.* at 25).  Plaintiff also argues that the ALJ improperly

---

[3] Plaintiff contends that Drs. Krishnamurthy and Bixler did not examine the complete record because they did not review "significant evidence, relating to the

determined Plaintiff had additional limitations not supported by the medical opinions in his RFC finding.  (*Id.*).  Plaintiff asserts that the "significant weight" given to Dr. Rosenberg's "opinion" and the "great weight" given to Dr. Nemitz's "opinion" is improper since both were treating physicians who did not provide true opinions regarding functional limitation.  (*Id.* at 26).

In response, Defendant argues that the ALJ did not have to rely on a physician's opinion to determine the RFC finding.  (*Id.* at 27-28 (citations omitted)).  Defendant contends that the ALJ considered whether the opinions of Drs. Krishnamurthy and Bixler were "consistent with the record as a whole" and discussed them in context with evidence in the record from before and after their evaluations.  (*Id.* at 28 (citing Tr. at 26)).  To any extent that the ALJ referred to the medical records from Drs. Rosenberg and Nemitz as "medical opinions," Defendant argues that this was harmless error.  (*Id.* at 29).

Plaintiff replies by asserting that "[a]lthough there is no regulatory requirement that an ALJ adopt a medical opinion as the basis of an RFC finding, courts have questioned the practice of ALJs interpreting raw medical evidence" in complex cases to render an RFC finding.  (*Id.* at 30 (citing *Hernandez v. Barnhart*, 203 F. Supp. 2d 1341, 1355 (S.D. Fla. 2002))).  Additionally, Plaintiff contends that the ALJ erred in relying on statements from Drs. Nemitz and Rosenberg that predate the

---

recurrence of Plaintiff's lymphoma – or the inability to rule out recurrence – in 2017 and 2018."  (Doc. 24 at 25).  For reasons explained later in this Opinion – *i.e.*, that the evidence did not definitively show recurrence – the Court finds this argument unpersuasive.

relevant time period and are not medical opinions because it leaves the RFC insufficiently explained or supported.  (*Id.*).

### 2.   Applicable Legal Standards

As noted above, an RFC is the most a claimant can still do despite the physical and mental limitations of her impairments.  *See* 20 C.F.R. § 416.945(a); *Phillips*, 357 F.3d at 1238.  The ALJ is responsible for determining the claimant's RFC, and he must consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work.  20 C.F.R. § 416.946(c).  The ALJ must consider all the claimant's medically determinable impairments, even those not designated as severe.  20 C.F.R. § 416.945(a)(2).

The Social Security regulations define medical opinions as statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis, and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions.  20 C.F.R. § 404.1527(a)(2).  An ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  While an ALJ must give a treating physician special deference, there is no such requirement for non-treating sources.  *Phillips*, 357 F.3d at 1240-41.  Additionally, an "ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Lacina v. Comm'r, Soc.*

*Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

### 3.    Analysis

While the ALJ stated that he gave the opinions of Drs. Krishnamurthy and Bixler partial weight, he noted that "[a]lthough they are not treating or examining sources, they are licensed with extensive experience evaluating and treating persons who have physical impairments and their opinion is consistent with the record as a whole."  (Tr. at 26).  The ALJ then appears to summarize the evidence consistent with Drs. Krshnamurthy and Bixler:

> As of June 29, 2017, the claimant's Hodgkin's Lymphoma was noted as in remission.  As for her degenerative disease of the right ankle, knees, and lumbar spine, physical examinations showed tenderness of right ankle and lumbar spine and limited lumbar range of motion, but otherwise were generally unremarkable.  Likewise, a consultative examination showed she had stable joints, negative straight leg raising bilaterally, full strength in the upper and lower extremities, and no sensory deficits.  In addition, the claimant reported she was doing well with pain medication. Medical imaging of the right ankle, knees, and lumbar spine showed mild and minimal degenerative changes.  Further, the claimant's hypertension was noted as controlled.

(*Id.* (internal citations omitted)).

Despite giving the opinions only partial weight, the ALJ followed their medical opinions almost entirely for the RFC.  (*Compare* Tr. at 23 *with* Tr. at 203, 2019).  Specifically, both Drs. Krishnamurthy and Bixler opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for two hours a day, sit for six hours a day, never climb ladders,

ropes, or scaffolds, but occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl.  (Tr. at 203, 219).  They stated that she should avoid concentrated exposure to extreme heat and vibrations, moderate exposure to hazards, but could have unlimited exposure to extreme cold, wetness, humidity, noise, fumes, odors, dusts, gases, and poor ventilation.  (*Id.* at 204, 220).  Further, both doctors' opinions stated they found the Plaintiff not disabled.  (*Id.* at 207, 224).

These opinions are either identical to or less limiting with the ALJ's determination that the Plaintiff could:

> [P]erform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except the claimant is limited to lift and carrying 10 pounds; standing and/or walking for two hours in an eight hour day; sitting for six hours in an eight hour day; never climbing ladders, ropes, or scaffolds, but occasionally climbing ramps and stairs; occasional balancing, stooping, kneeling, and crawling. She can only squat up to 30 percent of the [d]ay . . . . She should avoid concentrated exposure to environmental extremes of heat, cold, vibrations, and humidity.  She must avoid workplace hazards such as unprotected heights and unshielded rotary machines . . . . She must be permitted to alternate between sitting and standing while remaining at her workstation.

(*Id.* at 23).

Moreover, the ALJ appeared to assign significant weight to the consultative examiner, Dr. Rosenberg, because "he personally examined the claimant." (*Id.* at 26).  But, as both parties note, Dr. Rosenberg did not give a true medical opinion, merely observations and medical findings from examining Plaintiff.  (*See id.* at 820-26).  Thus, while the ALJ referred to Dr. Rosenberg's observations as opinions, none of the statements that the ALJ discusses were, in fact, opinions.  (*See id.* at 26-27).

Additionally, not all of the medical records discussed in this paragraph were solely Dr. Rosenberg's treatment notes.  (*See id.*).  The ALJ cites radiology records from both 2015 and 2017 to explain that "medical imaging of the left knee, right ankle, and lumbar spine showed mild and minimal degenerative changes."  (*Id.* at 27 (citing Tr. at 469, 897-900)).

The same is true of Dr. Nemitz.  (*Id.* at 27).  While the ALJ acknowledged that the treatment notes were from 2015, he detailed the other later evidence on the record that supported Dr. Nemitz's observations during treatment.  (*Id.*).  The ALJ does not mention the later-in-time treating physician, Dr. Alexander Nash, by name, but details his 2016 and 2017 reports on medical treatments as consistent with Dr. Nemitz's 2015 reports and cites Dr. Nash's reports as evidence.  (*Id.* (citing Tr. at 831, 847)).  The ALJ then discussed Plaintiff's own testimony from her application and hearing that supported the medical evidence on record.  (*Id.*).

Ultimately, while the ALJ labelled Drs. Nemitz and Rosenberg's information as "opinions," in the context of the whole decision, it is clear to the Court that the ALJ is recounting the medical evidence that shows Drs. Krishnamurthy and Bixler's opinions were consistent with the evidence and treatment notes in the record. Further, it is clear from the context of the entire decision that the ALJ is not relying on medical records from before the alleged disability to determine his RFC.  Rather, the ALJ was comparing records from before the alleged date of disability and records from after to determine whether there was a noted difference between the records. (*See id.* at 26-27).  This is not the ALJ making his own medical opinions, as Plaintiff

suggests.  (*See* Doc. 24 at 30).  Rather, the ALJ was considering both the recommendations of Drs. Krishnamurthy and Bixler and citing the medical records that supported their opinions.  (*See* Tr. at 23-27).  Thus, the ALJ sufficiently considered all the medical evidence of record, made explicit findings related to the evidence, and determined an RFC.  In so doing, the ALJ determined an RFC supported by substantial evidence.  The fact that the ALJ decided to add additional limitations after reviewing the medical treatment records from Plaintiff's physicians does not render the finding invalid.

    **C.**    **Remand is not required for any apparent conflict between the mental RFC limitations and the reasoning level requirements of the jobs cited.**

        **1.**    **The Parties' Arguments**

Next, Plaintiff argues that the RFC "limitations are in apparent conflict with two of the three jobs" that the ALJ found Plaintiff could perform that "[t]he conflict was not identified by the vocational witness," or otherwise addressed or resolved by the ALJ.  (Doc. 24 at 31).

In support, Plaintiff relies on *Johnson v. Commissioner of Social Security*, in which the Eleventh Circuit remanded the decision "because 'there is at least "apparently" a conflict between an employee limited to "simple, routine tasks" and one able to "deal with problems involving several concrete variables."'"  (*Id.* (quoting *Johnson v. Comm'r of Soc. Sec.*, 782 F. App'x. 875, 878 (11th Cir. 2019))).  Plaintiff contends that the limitation here is more restrictive than *Johnson* because it includes a limitation of "repetitive" tasks.  (*Id.*).  Additionally, Plaintiff argues that both the call out operator

and document preparer jobs require a reasoning level of three, which Plaintiff notes requires the individual to "[d]eal with problems involving several concrete variables in or from standardized situations." (*Id.* at 31-32 (quoting Doc. 24-1 at 5, 9)).  Thus, Plaintiff appears to argue that the ALJ erred in finding that Plaintiff could perform these actions without otherwise addressing the apparent conflict.  (*See id.* at 31-32).

Additionally, Plaintiff maintains that this error is not harmless because although there is one job remaining with a reasoning level of two – *i.e.*, addressing clerk – and the ALJ adopted the vocation expert's testimony that there are 10,000 jobs available in the national economy, the ALJ considered the cumulative total of all three jobs when determining that the jobs that Plaintiff could perform existed in significant numbers in the national economy.  (*Id.* at 32).  Moreover, Plaintiff argues that while the Eleventh Circuit has "held that 78,000 jobs nationally constituted substantial evidence to support the ALJ's finding at step five," the error cannot be harmless because the 10,000 remaining jobs is a fraction of the Eleventh Circuit's holding.  (*Id.* at 32-33 (citing *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020))).

In response, Defendant contends that it need not address Plaintiff's argument as it relates to the reasoning level three jobs because "Plaintiff fails to argue that she is unable to perform the remaining reasoning level 2 occupation, Addressing Clerk, so that issue is not before this Court." (*Id.* (citing *Access Now, Inc. v. Sw. Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004))).  Additionally, Defendant argues that "[t]he Eleventh Circuit has held the inclusion of an occupation that is not consistent with

18

the RFC is harmless error when at least one remaining occupation is consistent and represents a significant number of jobs in the national economy." (*Id* (citing *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019); *Valdez*, 808 F. App'x at 1009)). Thus, Defendant maintains that because the vocational expert testified that an individual could perform the work of an addressing clerk, which has 10,000 jobs available in the national economy, "the number of jobs for the remaining occupation Plaintiff can undisputedly perform represents a significant number of jobs." (*Id.* at 33-34 (citations omitted)). Furthermore, Defendant argues that Eleventh Circuit precedent supports a finding that significant number of jobs can be based on one occupation and that other jurists have determined that a lower number of jobs constituted significant number of jobs. (*Id.* at 34-35 (collecting cases)). Thus, Defendant contends that the Court should affirm the decision. (*Id.* (citing *Wooten*, 787 F. App'x at 674; *Valdez*, 808 F. App'x at 1009)).

Furthermore, although Defendant maintains that Plaintiff abandoned the argument, Defendant, nonetheless, argues that "there is no apparent conflict between a limitation to simple, routine, and repetitive tasks and reasoning level 2." (*Id.*). In support, Defendant cites *Valdez v. Commissioner of Social Security*, and argues that the Eleventh Circuit concluded that "a limitation to simple, routine, and repetitive tasks is not inconsistent with a reasoning level 2 job." (*Id.* (citing *Valdez*, 808 F. App'x at 1009)).

In her reply, Plaintiff maintains that she did not abandon the argument whether the reasoning level two job was inconsistent with the RFC and DOT

19

because she "argued remand was merited *even if* one of the three cited occupations remained." (*Id.* at 37-38 (emphasis in original)).  Additionally, Plaintiff argues that since the initial briefing, the Eleventh Circuit has found "that a limitation to 'understand, remember, and carry out short, simple instructions . . . seems to correspond to a GED reasoning level of one.'" (*Id.* at 38 (quoting *Albra v. Acting Comm'r of Soc. Sec.*, 825 F. App'x 704, 708 (11th Cir. 2020))).  Plaintiff maintains that because the limitation in *Alba* is analogous to the limitation here, the decision in *Alba* undermines Defendant's harmless error argument.  (*Id.*).

## 2.   Applicable Legal Standards

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).  "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips*, 357 F.3d at 1242.  An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there are jobs that exist in the national economy that a claimant can perform.  *Winschel*, 631 F.3d at 1180.  If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

In addition, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it.  The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence."  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018).  Thus, an ALJ must ask the vocational expert whether a conflict between his or her testimony and the DOT exists and must ask for an explanation if there appears to be a conflict.  *Id.* at 1363.  Moreover, whenever a conflict is apparent, the ALJ must ask the vocational expert about it.  *Id.*  An apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony.  At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case."  *Id.* at 1365.  "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them."  *Id.* at 1363.  This is an independent obligation of the hearing examiner.  *Id.*

### 3.    Analysis

As an initial matter, the Court finds that there is no apparent conflict between the limitation to "simple, routine, and repetitive tasks" and an occupation with a reasoning level two.  The Eleventh Circuit specifically addressed this contention in *Valdez v. Commissioner of Social Security* and determined that the two are not inconsistent.  *Valdez*, 808 F. App'x at 1009 (concluding that jobs with a reasoning level of two are not inconsistent with a limitation to "simple, routine, and repetitive

tasks").  Although Plaintiff argues that at least one jurist in this Court has found that this statement is dicta and that the Court should, therefore, follow the more recent decision in *Alba v. Commissioner of Social Security*, the Court need not consider whether the Eleventh Circuit's statement in *Valdez* was dicta.  Rather, as this Court has previously noted, because both *Valdez* and *Alba* are unpublished, neither decision is binding on this Court.  *Peterson v. Comm'r of Soc. Sec.*, No. 2:19-CV-566-FTM-29NPM, 2020 WL 6708022, at *3 (M.D. Fla. Nov. 16, 2020), appeal docketed No. 21-10086 (11th Cir. January 11, 2021).  Thus, both opinions are persuasive "only insofar as their legal analysis warrants."  *Id.* (quoting *United States v. Rodriquez-Lopez*, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004)).

Despite the lack of binding precedent on this issue within this Circuit, other Circuits have also found that no apparent conflict exists between a limitation to simple, routine, and repetitive tasks and an occupation requiring level two reasoning. *See Lawrence v. Saul*, 941 F.3d 140, 144 (4th Cir. 2019) (collecting cases and noting that "[i]n finding no apparent conflict between 'simple, routine, repetitive' and Level 2 reasoning, [it] join[s] every other circuit to consider the issue").  Without binding authority, the Court finds the Fourth Circuit's decision in *Lawrence v. Saul* persuasive. *See Peterson*, 2020 WL 6708022, at *3 (finding *Lawrence*, 941 F.3d at 144, persuasive and concluding that no conflict exists).  Thus, insofar as *Lawrence* is consistent with the Eleventh Circuit's statement in *Valdez*, the Court joins the jurists of this district who have relied on *Valdez* to find no apparent conflict exists between "simple,

routine, and repetitive" and a reasoning level two occupation.  *See, e.g.*, *Rae v. Saul*, No. 8:19-CV-2987-T-TGW, 2021 WL 211269, at *7 (M.D. Fla. Jan. 21, 2021); *Korstanje v. Comm'r of Soc. Sec.*, No. 8:19-CV-3003-T-MAP, 2021 WL 129822, at *4 (M.D. Fla. Jan. 14, 2021); *Green v. Saul*, 8:19-cv-2021-T-TGW, 2020 WL 5743185, at *10 (M.D. Fla. Sept. 25, 2020); *Fletcher v. Saul*, 8:19-cv-1476-T-23AAS, 2020 WL 4188210, at *1 (M.D. Fla. July 21, 2020).

Because the Court determines that no apparent conflict exists between "simple, routine, and repetitive" and a reasoning level two occupation, the Court finds that Plaintiff could perform the work as an addressing clerk.  Thus, the Court turns to the issue of whether the occupation of addressing clerk exists in the national economy, such that the ALJ's error in finding that Plaintiff could perform the work of either a call out operator or a document preparer is harmless.

To the extent that Plaintiff attempts to argue that the ALJ did not find that the job of addressing clerk alone existed in significant numbers and the Court cannot make such a determination itself, (*see* Doc. 24 at 32), the Court finds the argument lacks merit.  Rather, the Eleventh Circuit in *Valdez* concluded that even without the level three reasoning occupations, the ALJ determined that the remaining jobs existed in significant in the national economy.  *Valdez*, 808 F. App'x at 1009. Likewise, the Court finds that the ALJ determined that the 10,000 jobs in addressing clerk existed in significant numbers.  Specifically, the ALJ found that jobs – *i.e.*, multiple jobs – existed in significant numbers in the national economy.  (Tr. at 28). In listing out the three positions of addressing clerk, call out operator, and document

preparer, the ALJ inherently found each of those as a job that existed in significant numbers in the national economy.  (*See id.*).  The Eleventh Circuit has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations." *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015).  Nonetheless, this Court has found a lower number of jobs significant.  *See Blackmon v. Saul*, No. 8:19-CV-3040-T-AEP, 2021 WL 222777, at *4 (M.D. Fla. Jan. 22, 2021) (finding 7,000 jobs significant).

For these reasons, the Court finds that the ALJ's error in not addressing the apparent conflict between the level three reasoning positions and the limitation to simple, routine, and repetitive tasks harmless because the ALJ found that Plaintiff can perform a job as an addressing clerk, which exists in significant numbers in the national economy.  Thus, notwithstanding the ALJ's error, the Court affirms on this issue because the error is harmless.  *See Denomme*, 518 F. App'x at 877.

### D.    The ALJ did not err in determining mental RFC limitations without performing a Psychiatric Review Technique ("PRT").

#### 1.    The Parties' Arguments

Plaintiff next argues "[t]he ALJ erred by making a determination about Plaintiff's mental limitations resulting from her impairments without issuing the underlying findings mandated by the special technique for the evaluation of mental impairments under 20 C.F.R. § 404.1520a" and "otherwise failed to provide sufficient explanation for the specific mental limitations resulting from physical

impairments under SSR 96-8p." (Doc. 24 at 40). Thus, Plaintiff contends that because the ALJ imposed mental functional limitations without making findings related to Plaintiff's mental impairments, the ALJ committed legal error that requires remand. (*Id.* at 41).

Plaintiff maintains that if she has a medically determinable mental impairment, her limitations based on the mental impairment must be rated on her ability to function in the following categories: "understand[ing], remember[ing], or apply[ing] information; interact[ing] with others; concentrate[ing], persist[ing], or maintain[ing] pace; and adapt[ing] or manag[ing] oneself." (*Id.* (alterations in original) (quoting 20 C.F.R. § 404.1520a(c))). Plaintiff continues that the ALJ must assess the severity of the mental impairment after considering the categories and the written decision must incorporate the information and make a specific finding as to the limitations of each category. (*Id.* at 40-41 (citing 20 C.F.R. §§ 404.1520a(d); 404.1520a(e)(4))). Plaintiff contends, however, that the ALJ did not perform the requisite evaluation or make the requisite findings. (*Id.* at 41 (collecting cases)). Plaintiff further argues that the ALJ's failure is not harmless because his decision to find the limitation and then explain the basis "contravene[d] the mandate and steps specified in 20 C.F.R. § 404.1520a." (*Id.* at 41). Moreover, Plaintiff contends that any argument by the ALJ that compliance with 20 C.F.R. § 404.1520a was not required lacks merit because "the proper analysis necessarily would have involved a finding specifically addressing the presence or absence of mental impairments with the requisite findings. Here, no underlying findings were made, and the decision is

silent on this issue." (*Id.* at 42 (citing *Armata v. Berryhill*, No. 3:17-CV-30054-KAR, 2018 U.S. Dist. LEXIS 171804, at *42 (D. Mass. Oct. 4, 2018))).

Finally, Plaintiff argues that even if the ALJ's noncompliance with 20 C.F.R. § 404.1520a is deemed harmless, remand is necessary because "the lack of rationale supporting the ALJ's findings fails to comply with the mandates of SSR 96-8p." (*Id.*). In support, Plaintiff maintains that the ALJ's decision failed to "explain how physically based medically determinable impairments were determined to result in non-exertional or mental functional impairments." (*Id.* at 42-43).

In response, Defendant argues that the ALJ did not have to address any mental impairment in the decision because "Plaintiff never alleged a disability based on a mental impairment" and "Plaintiff failed to present evidence establishing a colorable claim of mental impairment." (*Id.* at 43 (citing Tr. at 39-95, 352, 271; *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005))). In support, Defendant notes that the ALJ found that "Plaintiff 'did not have any mental health therapy'" but included the non-physical limitations due to "*chemotherapy-related* issues of fatigue, dizziness, and anxiety." (*Id.* (emphasis in original) (citing Tr. at 27, 452-1054)). Additionally, Defendant maintains that "[e]ven if records reflects a reference to something like a report of anxiety, a diagnosis of a mental condition, or treatment for a mental condition, that does not demonstrate [that] a claimant made a colorable claim of a mental impairment that required application of the PRT." (*Id.* at 43-44 (collecting cases)). Nevertheless, Defendant contends that Plaintiff failed to cite to a diagnosis of mental impairment or any objective evidence indicating she had a

mental impairment and that the evidence reflects normal psychiatric findings. (*Id.* (citing Tr. at 567, 615, 760, 771, 1051)). Thus, Defendant argues that Plaintiff did not establish a colorable claim of mental impairment and the ALJ, therefore, was not required to apply the PRT. (*Id.*).

Nevertheless, Defendant argues that even assuming *arguendo* the ALJ erred in failing to conduct a PRT, the error is harmless. (*Id.*). In support, Defendant notes that the PRT is used to evaluate the severity of a mental impairment at steps two and three. (*Id.* (citing 20 C.F.R. § 404.1520a.)). Defendant maintains that any error at step two would have been harmless because the ALJ would not have found the impairment severe, given the normal psychiatric findings, and because the ALJ otherwise found that Plaintiff had at least one severe impairment. (*Id.* at 44-45 (citing *Dixon v. Astrue*, No. 5:09-cv-320, 2010 WL 4942141, at *10 (N.D. Fla. Oct. 26, 2010); *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018))).

Finally, Defendant argues that Plaintiff's contention that the ALJ erred in determining Plaintiff's RFC by failing to comply with SSR 96-8p lacks merit. (*Id.* at 46). Rather, Defendant contends that "an ALJ satisfies the specificity obligations of SSR 96-8p by discussing a claimant's impairments and thereafter expressing a claimant's RFC in vocationally relevant terms." (*Id.* (citing *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011))). Defendant maintains that the ALJ properly considered and evaluated all of the medical evidence and Plaintiff's testimony and ultimately concluded that "despite Plaintiff's 'lack of mental health

therapy,'" the ALJ included mental limitations "because of the 'residual effects of chemotherapy including, fatigue, dizziness, and anxiety.'" (*Id.* (quoting Tr. at 27)). Thus, Defendant argues that the ALJ complied with SSR 96-8p. (*Id.* at 46-47 (citing *Carson*, 440 F. App'x at 864; *Freeman*, 220 F. App'x at 959; *Hawkins v. Berryhill*, No. 4:17-cv-2136-CLS, 2018 WL 5807524, at *5-6 (N.D. Ala. Nov. 7, 2018))).

In her reply, Plaintiff argues that Defendant's "reformulation of regulatory requirements to allow noncompliance merely because the mental limitations did not originate from an impairment classified as having a mental genesis should be rejected." (*Id.*).  In support, Plaintiff contends that because the ALJ found mental functional limitations, the ALJ was required to engage in a PRT regardless of whether Plaintiff had treatment or a diagnosis.  (*Id.*).  Plaintiff maintains that the purpose of the PRT is "to outline the rationale required of decisions when determining mental limitations" and the ALJ's decision does contain a rationale, in violations of 20 C.F.R. § 404.1520a and SSR 96-8p.  (*Id.* at 47-48).

### 2.    Applicable Legal Standards

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010).  "An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments."  *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009).

When considering a claimant with a mental impairment, "[a]gency regulations require the ALJ to use the 'special technique' dictated by the [Psychiatric Review Technique Form] for evaluating mental impairments." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting 20 C.F.R. § 404.1520a(a)).  This technique requires that the ALJ assess Plaintiff's mental impairments using the following four broad functional areas (known as the Paragraph B criteria):  (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3).  An ALJ is required to incorporate the results of the PRT into the findings and conclusions in his decision.  *Moore*, 405 F.3d 1208, 1213-14; 20 C.F.R. § 404.1520a(e)(4).  Moreover, remand is required when two factors are present:  (1) a claimant has presented a "colorable claim" of mental impairment, and (2) an ALJ has failed to apply the special technique.  *See id.* at 1214.

### 3.    Analysis

The Court finds that the ALJ did not err in failing to complete a PRT to assess Plaintiff's mental impairment because Plaintiff did not raise a colorable claim of mental impairment.  The Eleventh Circuit has held that the ALJ did not err in failing to "consider undisputed evidence of [the plaintiff's] mental impairments and intellectual functioning" because the plaintiff neither listed a mental or intellectual impairment on his application or testified that he suffered from such an impairment. *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005).  Rather, the Court noted that an ALJ has no "obligation to investigate a claim not presented at the time of the

application for benefits and not offered at the hearing as a basis for disability." (*Id.* (quoting *Pena v. Chater,* 76 F.3d 906, 909 (8th Cir.1996))).  Similarly, the Eleventh Circuit has held that when a plaintiff failed to allege a mental disability in the disability report, the ALJ did not need to order a consultative examination.  *Hethcox v. Comm'r of Soc. Sec.*, 638 F. App'x 833, 835 (11th Cir. 2015).  Although neither address the ALJ's failure to perform a PRT, the Court finds the Eleventh Circuit's holdings in these cases analogous to the instant case.  Thus, because Plaintiff did not allege a mental impairment in either her application for disability or her testimony at the hearing, (*see* Tr. at 78, 352, 372), the Court finds that she did not raise a colorable claim of mental impairment.  To conclude otherwise would impose a burden on the ALJ contrary to Eleventh Circuit precedent.  *See Street*, 133 F. App'x at 627.

Notwithstanding this finding, the Court notes that Plaintiff has still failed to establish a colorable claim of a mental disability.  Specifically, Plaintiff has neither been diagnosed with nor treated for a mental impairment.  Rather, as the ALJ noted, Plaintiff's treatment notes from Florida Cancer Specialists note that Plaintiff "complained of fatigue, tiredness, muscle cramps, insomnia, and anxiety." (Tr. at 24 (citing Tr. at 749, 787, 791)).  In at least one of the cited reports, however, Plaintiff was found to have no depression or anxiety despite her subjective complaint.  (*Id*. at 787).  Additionally, treatment notes from Florida Cancer Specialists during the same time period equally reflect that she did not complain of anxiety.  (*See id*. at 738, 746, 789, 800, 901, 912, 914).

In light of the conflicting subjective complaints and lack of diagnosis, the Court finds that Plaintiff failed to establish a colorable claim of mental impairment. Rather, it is clear to the Court that the ALJ acknowledged Plaintiff's subjective complaints of anxiety as they relate to the chemotherapy but found that she did not suffer from a mental impairment itself. (*See id*. at 27). Thus, the ALJ did not err when he chose not to complete a PRT to assess a mental impairment.

As to Plaintiff's argument that the ALJ failed to provide a rationale for how the physical impairments resulted in mental limitations, (*see* Doc. 24 at 42-43), the Court finds the argument is likewise without merit. Social Security Ruling 96-8p requires the RFC assessment to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (1996). Here, the ALJ did just that. Specifically, the ALJ went through all the medical evidence of record, evaluated the credibility of Plaintiff's complaints, addressed inconsistencies, and assigned weights to the medical opinions and provided reasons thereto. (Tr. at 23-27). The ALJ then summarized his findings in a final paragraph at step three:

> In sum, the above residual functional capacity assessment is supported by the claimant['s] degenerative joint disease of the knees and right ankle, degenerative disc disease of the lumbar spine, history lymphoma with residual effects from chemotherapy, and obesity. Physical examinations showed tenderness of right ankle and lumbar spine and limited lumbar range of motion, but otherwise were generally unremarkable. Likewise, a consultative examination showed she had stable joints, negative straight leg raising

> bilaterally, full strength in the upper and lower extremities, and no sensory deficits.  In addition, the claimant reported she was doing well with pain medication.  Medical imaging of the right ankle, knees, and lumbar spine showed mild and minimal degenerative changes.  Further, the residual functional capacity is consistent with the opinion of the State agency medical consultants who also opined that claimant could perform a reduced range of light work. While the claimant did not have any mental health therapy, the mental limitations are supported by the claimant's pain symptoms, limited education, and residual effects of chemotherapy including fatigue, dizziness, and anxiety.

(*Id.* at 27 (internal citations omitted)).  The ALJ's thorough and detailed analysis of the pertinent medical history and the summation at the end of the step three analysis, satisfies the ALJ's duties under SSR 96-8p.  Additionally, the last sentence of the ALJ's summary clarifies precisely what evidence the ALJ relied on to determine the mental limitations.  (*See id.*).  To the extent Plaintiff disagrees with the ALJ's findings, it does not warrant remand.

In sum, the Court finds that the ALJ did not err in failing to conduct a PRT because Plaintiff failed to establish a colorable claim of mental impairment. Additionally, the Court finds that the ALJ satisfied his obligations under SSR 96-8p in fully addressing the medical evidence of record and determining Plaintiff's RFC. Thus, the Court affirms on this issue.

    **E.**    **The ALJ did not err in finding that Plaintiff did not meet the criteria of Listing 13.05(B) and the Appeals Council did not err in refusing to consider the new evidence.**[4]

        **1.**    **The ALJ did not err in finding that Plaintiff did not meet the criteria of listing 13.05(B).**

            **a.**    **The Parties' Arguments**

Next, Plaintiff argues that "[t]he ALJ failed to properly evaluate Plaintiff's Hodgkin lymphoma at step three, resulting in an unsupported finding that her impairments did not meet or medically equal the criteria of Listing 13.05(B)," which requires a finding of disability if Plaintiff has "Hodgkin lymphoma with failure to achieve clinically complete remission, or recurrent lymphoma within 12 months of completing initial anticancer therapy." (Doc. 24 at 48 (quoting 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 13.05(B))). Specifically, Plaintiff argues that "the evidence showed probable recurrence of lymphoma by October 2017 – within 12 months of Plaintiff's last chemotherapy treatment of November 2016 – or, alternatively, a very brief remission that should have been considered under medical equivalency." (*Id.* at 49). In support, Plaintiff summarizes the relevant medical history, stating that in November 2016 Plaintiff finished chemotherapy and "the November 25, 2016 PET scan indicated stable mesenteric adenopathy with no significant interval change since in the associated low grade FDG activity" but that "residual malignancy could not be excluded" and that a mass was still present. (*Id.*

---

[4] The Court agrees with Defendant's argument that Plaintiff makes two distinct arguments in this section. Accordingly, the Court will consider each argument separately.

(citing Tr. at 809, 912)).  Plaintiff argues that she was not in remission until the January 31, 2017 CT scan, which indicated that the mass was no longer visible.  (*Id.* (citing Tr. at 914)).  Plaintiff maintains, however, that on October 10, 2017, her "CT scan was deemed suboptimal" but that it "noted a treated mesenteric lymphadenopathy in the abdomen and pelvis, without new lymph nodes, and two probably benign lymph nodes, but without specific evidence of recurrent neoplastic disease."  (*Id.* (citing Tr. at 1022)).  Additionally, Plaintiff contends that the January 19, 2018 "CT scan noted that soft tissue nodules at the root of the mesentery in the mid abdomen were difficult to distinguish from adjacent unopacified bowel loops, but appeared to be stable to decreased size when compared with prior examinations."  (*Id.* at 50 (citing Tr. at 997)).  Moreover, Plaintiff notes that although a PET scan was ordered at that time, Plaintiff's insurance denied it.  (*Id.* (citing Tr. at 992)).  Nevertheless, Plaintiff maintains that the March 3, 2018 PET scan showed interval increase in metabolism in remnant central abdominal mass, suggesting recurrent Hodgkin disease, without evidence for active lymphoma.  (*Id.* (citing Tr. at 1045)).  Accordingly, Plaintiff argues that "the ALJ's finding, that no physician 'has mentioned findings equivalent in severity to the criteria of any listed impairment,' is unsupported by the substantial evidence of record," because the record "indicates likely recurrence or a lack of meaningful remission."  (*Id.* (quoting Tr. at 23)).

Additionally, Plaintiff argues that the ALJ's supplemental rationale – that Plaintiff's "representative did not indicate that [Plaintiff's] impairments met or

equaled the requirements of any listing" – is meritless because the Hodgkin lymphoma was alleged as a disability and discussed at the hearing.  (*Id.* at 52).

In response, Defendant argues that "the ALJ properly found Plaintiff did not met or equal any Listing, including Listing 13.05(B)."  (*Id.* at 53 (citing Tr. at 22)). In support, Defendant notes that Plaintiff was diagnosed in early 2016, underwent six chemotherapy sessions, with the last one being in November 2016, a PET/CT scan in February 2017 showed no evidence of recurrence, and while a PET/CT scan in March 2018 suggested recurrence, "there was no additional metabolic or other evidence of active lymphoma."  (*Id.* (citing Tr. at 22, 580-81, 787, 973, 1045)). Additionally, Defendant notes that Plaintiff's representative did not mention the Listings at the hearing and "acknowledged records showed no recurrence of cancer and that Plaintiff was in remission."  (*Id.* (citing Tr. at 27-114, 49-50)).  Similarly, Defendant maintains that Plaintiff testified that the cancer was in remission.  (*Id.* at 53-54 (citing Tr. at 55, 81)).  Moreover, Defendant argues that in making his determination, the ALJ noted that "no treating or examining physician ha[d] mentioned findings equivalent in severity to the criteria of any listed impairment" and that he relied on the State agency consultant's opinions from March 2017 and May 2017, who opined that Plaintiff did not meet the Listing criteria.  (*Id.* at 54 (citing Tr. at 23, 190-91, 221-22)).  Thus, Defendant contends that the ALJ's finding is supported by substantial evidence.  (*Id.*).

Furthermore, Defendant essentially asserts that Plaintiff's argument contradicts her own testimony and amounts to a request that the Court reweigh the

evidence.  (*See id.* at 54 (citations omitted)).  Defendant maintains that even if Plaintiff believes that the records show recurrence, no record "include[s] definitive evidence" to show she was no longer in remission.  (*Id.* at 54-55 (citing Tr. at 901, 1020, 2045)).  Defendant maintains that "Plaintiff's speculative interpretations of the evidence do not undermine the ALJ's decision."  (*Id.* at 55 (citing *Moore*, 405 F.3d at 1213)).  Rather, Defendant maintains that the ALJ interpreted the evidence, and the Court cannot weigh the facts anew but must affirm where the decision, as it is here, is supported by substantial evidence.  (*Id.* at 55-56 (citing *Mitchell*, 771 F.3d at 782)).

In her reply, Plaintiff merely notes that Defendant did not address the evidence cited by Plaintiff, which indicated a likely recurrence or lack of sustained remission.  (*Id.*).

### b.    Applicable Legal Standards

At step three, to meet the requirements of a Listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d).  The Listings of Impairments in the Social Security Regulations identify impairments that are considered severe enough to prevent a person from engaging in gainful activity.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If a plaintiff can meet a listed impairment or otherwise establish an equivalence, then a plaintiff is presumptively determined to be disabled and the ALJ's sequential evaluation of a claim ends.  *Edwards v. Heckler*, 736 F.2d 625, 626 (11th Cir. 1984). The burden is on Plaintiff to show that she meets the Listings.  *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).  If an impairment manifests

only some of the criteria, then it does not qualify, no matter how severe the impairment.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet a Listing, a plaintiff must have a diagnosis included in the Listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement."  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 1525(a)-(d)).  "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments, symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment."  *Id.* (citing 20 C.F.R. § 404.1526(a)).

The pertinent listing at issue here, 13.05(B), requires a finding of disability if the plaintiff has "Hodgkin lymphoma with failure to achieve clinically complete remission, or recurrent lymphoma within 12 months of completing initial anticancer therapy."  20 C.F.R. § Pt. 404, Subpt. P, App'x 1, § 13.05(B).

### c.    Analysis

The Court finds that the substantial evidence supports the ALJ's finding that Plaintiff did not meet the criteria of Listing 13.05(B).  (*See* Tr. at 22).  The ALJ noted that Plaintiff was diagnosed with lymphoma in early 2016, and underwent six rounds of chemotherapy, the last in November 2016.  (*Id.* (citing Tr. at 787)).  The ALJ continued, noting that in February 2017, a CT scan "showed no evidence of recurrence disease," and that "[a]s of June 29, 2017, [Plaintiff's] Hodgkin's Lymphoma was noted as in remission and she was finished with chemotherapy."

(*Id.* (citing Tr. at 828, 973)).  Additionally, the ALJ cited the PET/CT Scan in March 2018, which indicated "interval increase in metabolism in remnant central abdominal mass suggesting recurrent Hodgkin's disease but there was no additional metabolic or other evidence of active lymphoma." (*Id.* (citing Tr. at 1045)).  Having summarized the pertinent evidence, the ALJ then noted that Plaintiff's representative did not indicate that Plaintiff met any Listing and that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (*Id.* at 23).

As noted above, Plaintiff had the burden to "provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement," and here, Plaintiff has failed to meet her burden.  *See Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 1525(a)-(d)).  Plaintiff provided medical reports that indicated the *possibility* that her lymphoma had recurred. (*See* Tr. at 992, 997, 1020, 1022, 1045).  But, none of the records cited by Plaintiff demonstrate that the lymphoma had in fact recurred. (*See id.*).  The ALJ found as much when he cited one of the records but noted that although the records "suggest[ed] recurrent Hodgkin's disease," there was "no additional metabolic or other evidence of active lymphoma." (*Id.* at 22 (citing Tr. at 1045)).  Moreover, as the ALJ correctly noted that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (*Id.* at 23).  Based in part on this lack of evidence, the ALJ concluded that Plaintiff did not meet the criteria of the Listings. (*Id.* at 22-23).  Now, Plaintiff has failed again to provide any

documentation that the lymphoma had actually recurred.  To meet her burden, Plaintiff needed to provide "corroborative medical evidence supported by clinical and laboratory findings." *Kirchner v. Comm'r of Soc. Sec.*, No. 5:17-CV-197-OC-18PRL, 2018 WL 3639918, at *3 (M.D. Fla. June 25, 2018), *report and recommendation adopted,* No. 5:17-CV-197-OC-18PRL, 2018 WL 3637520 (M.D. Fla. July 31, 2018) (citing *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 199)1). Nevertheless, Plaintiff points only to other evidence that she believes together with the evidence cited by the ALJ suggests – even strongly suggests – the recurrence of the disease.  This, however, does not require remand because the mere suggestion or possibility of recurrence is not corroborative evidence supported by clinical and laboratory findings.  *See id.*  Rather, the evidence cited by Plaintiff in her brief is speculative at best.

The Court cannot reweigh evidence.  Rather, the Court must affirm if substantial evidence supports the Commissioner's findings.  *See Edwards*, 937 F.2d at 584 n.3.  Here, the ALJ found that Plaintiff did not meet the criteria of Listing 13.05(B) notwithstanding at least one report, less than 12 months after her date of remission, that *suggested* but did not establish or even opine that the disease had definitively recurred.  Plaintiff has offered no evidence to contradict this finding or to otherwise show that the ALJ did not consider the evidence of record.  (*See* Doc. 24 at 48-50).  Rather, the ALJ explicitly noted that there was a suggestion of recurrence but determined that the evidence did not support the requisite finding to establish the

Listing. (*See* Tr. at 22-23). Thus, without more, the Court finds that substantial evidence supports the ALJ's decision and, therefore, affirms on this issue.

### 2. The Appeals Council did not err refusing to consider the new evidence.

#### a. The Parties' Arguments

Here, Plaintiff notes that she provided additional evidence to the Appeals Council to support the prior suspicion that the lymphoma had recurred. (Doc. 24 at 50). Specifically, Plaintiff argues that in light of the May 2018 PET and CT scans, Plaintiff had an exploratory laparoscopy in June 2018, which found no masses, but Plaintiff, nonetheless, had "mild fatigue, tiredness, and weakness." (*Id.* at 50 (citing Tr. at 133, 135-36)). Additionally, Plaintiff maintains that a CT scan in August 2018 scan was suboptimal but indicated that the possibility of recurrent lymphoma could not be excluded because the lymph nodes appeared larger than previous exams. (*Id.* at 51 (citing Tr. at 131-32)). Finally, Plaintiff notes in September 2018 another exploratory laparoscopy was ordered along with a bone marrow biopsy. (*Id.* (citing Tr. at 116-18, 126-27)). Thus, Plaintiff argues that the evidence submitted to the Appeals Council "showed that a recurrence of the lymphoma was possible and was still being investigated." (*Id.*).

In its decision, Plaintiff maintains that the Appeals Council did not dispute that the evidence was new or that there was good cause for the timing of providing it to the Appeals Council, but found only that the evidence "d[id] not show a reasonable probability that it would change the outcome of the decision." (*Id.* at 51-

52 (quoting Tr. at 2)).  Plaintiff argues that in so finding, the Appeals Council erred because the evidence supports the prior suspicions of recurrence, which relate to the Listing 13.05(B) criteria.  (*Id.*).

In response, Defendant argues that the Appeals Council properly determined that the evidence did not show a reasonable probability that the outcome of the ALJ's decision would change because, rather than showing that Plaintiff's lymphoma had recurred, the evidence describes "equivocal evidence" or discusses the "possibility" of the disease.  (*Id.* at 56-57).  Thus, Defendant contends that "[t]here is no reasonable probability that the inconclusive evidence, considered with all the evidence in the record before the ALJ, would change the ALJ's step three finding."  (*Id.* at 57).

In her reply, Plaintiff argues that Defendant's argument lacks merit because the ALJ was tasked with resolving whether there was sustained remission long enough to render Listing 13.05(B) and, therefore, the evidence of the possible recurrence was material.  (*Id.*).

### b.    Applicable Legal Standards

Generally, the administrative process permits a claimant to present new evidence at each stage of the administrative process.  *Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x 939, 943 (11th Cir. 2017); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. § 404.900(b).  Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis.  *Ingram*, 496 F.3d at 1253.  The Appeals Council must consider new and material

evidence that relates to the period on or before the date of the ALJ's decision and "must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)); *Ashley*, 496 F.3d at 943 (citing *Washington v. Comm'r Soc. Sec.*, 806 F.3d 1317, 1320 (11th Cir. 2015)). New evidence is considered material and thereby warranting a remand if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). In addition, the new evidence must not be cumulative of other evidence of record. *Ashley*, 496 F.3d at 943-44. "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Washington*, 806 F.3d at 1321.

Thus, courts employ a two-prong analysis to determine if the Appeals Council erred when not remanding an action. The first prong is whether the evidence is "new," and the second prong is whether the new evidence is "material." *Ingram*, 496 F.3d at 1253.

### c.    Analysis

The parties focus their arguments on the second prong of whether the new evidence is "material." Before addressing that issue, the Court must consider whether the evidence is "new."

To be considered new, the evidence must relate to the period on or before the date of the administrative law judge hearing decision. *Id.* In this case, the ALJ rendered his decision on October 24, 2018. (Tr. at 15). The evidence submitted to

the Appeals Council constituted medical records from Florida Cancer Specialists dated March 5, 2018 through September 26, 2018, which was before the ALJ rendered his decision. (*Id.* at 115-49). Thus, the evidence submitted to the Appeals Council constitutes new evidence. The Court now turns to the second prong, whether the evidence is material.

For evidence to be material, the evidence must demonstrate that the ALJ's action, finding, or conclusion is contrary to the weight of the evidence currently of record. *Ingram*, 496 F.3d at 1253.

The Appeals Council denied Plaintiff's request for review. (Tr. at 1). Regarding the new evidence, the Appeals Council concluded that the "evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. at 2).

As noted above, the ALJ considered evidence that supported the possibility of recurrence but found the evidence did not show that recurrence had occurred. (*Id.* at 27). Although the evidence submitted to the Appeals Council suggested the possibility of recurrence, the evidence again does not show that the lymphoma has in fact recurred. (*See id*. at 115-49). Thus, the Appeals Council properly concluded that the information was not material. (*Id.* at 2). Specifically, the ALJ had reviewed reports suggesting the possibility recurrence and determined it insufficient to establish that Plaintiff met the criteria of a Listing. (*Id.* at 22). Thus, because the new evidence again provided no evidence that the lymphoma had definitively recurred, the evidence did not provide a reasonable probability that the new evidence

would change the administrative outcome.  Accordingly, the Court finds that the Appeals Council did not err in refusing to consider the new evidence.  (*See id.* at 2).

**F.    The ALJ's rejection of Plaintiff's alleged symptoms and limitations is supported by substantial evidence.**

### 1.    The Parties' Arguments

In her final argument, Plaintiff contends that "[t]he ALJ erred in finding that Plaintiff's 'statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.'"  (Doc. 24 at 58 (quoting Tr. at 24)).  In support, Plaintiff notes that although the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," he did not explain why Plaintiff's impairments did not support her allegations.  (*Id.* (quoting Tr. at 27)).  Plaintiff maintains that the ALJ imposed mental limitations due to the residual effects of chemotherapy but that "it is unclear how the ALJ determined that such effects . . . would only limit Plaintiff to 'simple, routine, and repetitive tasks' and frequent interaction with others."  (*Id.* (citing Tr. at 23)).

Additionally, Plaintiff argues that the ALJ did not address the effect of Plaintiff's "musculoskeletal impairments, including her multilevel degenerative lumbar spondylosis with multilevel neural foraminal stenosis, and small disc bulge at L4-L5, . . . her moderate to severe facet arthropathy of the lumbosacral spine, . . . or her right knee osteoarthritis."  (*Id.* at 58-59 (citing Tr. at 469, 489, 522, 897-900,

1038)).  Plaintiff contends that the combination of these impairments required "significant opioid medications," and that any reduced pain resulted from high dose opioid medications.  (*Id.* (citing Tr. at 466-85, 492-504, 506, 510-13, 516-17, 844-45, 847-48, 852-53, 856-57, 1005-08, 1047-49)).

Similarly, Plaintiff asserts that the ALJ did not "properly consider Plaintiff's allegations of pain and limitations due to carpal tunnel syndrome."  (*Id.*).  Plaintiff maintains that the ALJ found it was a non-severe impairment despite treatment notes indicating that she was symptomatic in January 2015 and October 2015 through May 2017 and was referred to a surgeon.  (*Id.* (citing Tr. at 21, 468, 471, 703-05, 725-26, 934-44)).  Thus, Plaintiff argues that "given the longstanding positive clinical findings, the ALJ erred by wholly rejecting Plaintiff's allegations of hand limitations."  (*Id.*).

Finally, Plaintiff contends that the ALJ's reliance on Plaintiff's daily activities does not provide substantial evidence for the ALJ's decision because Plaintiff's ability to "cook once a week, clean counters, and shop twice a month" as well as her need for assistance in personal care support rather than contradict her allegations.  (*Id.* at 59-60 (citations omitted)).  Thus, Plaintiff argues that the ALJ's decision is not supported by substantial evidence and remand is warranted.

In response, Defendant argues that "the ALJ properly found Plaintiff's subjective complaints unsupported for the reasons explained throughout the decision" and that the Court should not disturb such findings if they are supported by substantial evidence.  (*Id.* at 60 (citations omitted)).  In support, Defendant cites the

ALJ's finding that the treatment notes show "an absence of cancer; imaging scans of the ankle, knees, or back showing mild and minimal degenerative findings; normal examination findings related to strength, range of motion, sensation, gait, and neurovascular functioning; non-tender abdomen; no joint tenderness or swelling; no muscle tenderness or edema of the extremities; and a negative straight leg raise test." (*Id.* (citing Tr. at 24-26, 508, 511, 515, 519, 522-23, 535, 614, 618, 740, 746, 787, 789, 791, 800, 809, 821-22, 828, 831, 847, 882, 898, 901, 973, 992, 1045, 1050, 1051)). Additionally, Defendant asserts that the ALJ properly found the subjective complaints "inconsistent with Plaintiff's improvement with treatment." (*Id.* 60-61 (citing Tr. at 24-26)).  Moreover, Defendant contends that the ALJ found the complaints inconsistent with Plaintiff's own reports.  (*Id.* at 61 (citing Tr. at 24-26, 614, 740, 746, 787, 789, 791, 800, 566, 616, 992, 1050, 823, 901)).  Finally, Defendant maintains that the ALJ properly found the complaints inconsistent with Plaintiff's daily activity and work history.  (*Id.* at 61-62 (citing Tr. at 27, 492, 496, 500, 504, 514, 273-751, 821)).  Thus, Defendant argues that the ALJ's decision is supported by substantial evidence and the decision should, therefore, be affirmed. (*Id.* at 62).

Insofar as Plaintiff argues that the ALJ did not consider the combination of impairments, Defendant appears to argue that the contention is without merit.  (*See id.* at 62).  Specifically, Defendant notes that the ALJ found that Plaintiff had several severe and non-severe impairments at step two and at step three considered "an impairment or combination of impairments" when determining Plaintiff did not

meet the a Listing and noted that he considered "all symptoms" in determine the RFC.  (*Id.* (citing Tr. at 21-23)).  Defendant contends that these statements demonstrate that the ALJ considered all impairments in combination.  (*Id.* (citing *Wilson*, 284 F.3d at 1224-25; *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 952 (11th Cir. 2014))).  Additionally, Defendant notes that the ALJ discussed the testimony and medical imaging related to the musculoskeletal symptoms and discussed normal and abnormal findings related to symptoms.  (*Id.* at 62-62 (citing Tr. at 21, 23-27)).  Thus, Defendant argues that the ALJ considered the conditions.  (*Id.*).

Ultimately, Defendant argues that Plaintiff merely suggests that the ALJ could have made a different finding but that the Court does not reweigh the evidence.  (*Id.* at 62 (citations omitted)).  Accordingly, Defendant maintains that because substantial evidence supports the ALJ's decision, the decision should be affirmed.  (*Id.*).

In reply, Plaintiff first argues that she is not asking the Court to reweigh evidence but rather indicating specific evidence not considered by the ALJ that the Court may consider in determining whether the ALJ's decision is supported by substantial evidence.  (*Id.* (citations omitted)).  Additionally, Plaintiff argues that although Defendant relied on Plaintiff's work activity to support its argument that Plaintiff's complaints are unsupported, the work history is unreliable because it appears work history carried over information prior to the alleged onset date and that there is no indication that Plaintiff worked after the alleged onset date.  (*Id.* at 63-64

(citing Tr. at 470, 473, 476, 479, 482, 485, 488, 492, 496, 500)).  Additionally,

Plaintiff contends that Defendant's argument "that impairments present prior to the

alleged onset date could not contribute to Plaintiff's work-related limitations

thereafter . . . is contrary to the mandate that a claimant's impairments be considered

in combination for cumulative effect," that Plaintiff reported a worsen of her

musculoskeletal pain in the months leading up to her alleged onset date, and that the

record documents "a decline in functionality even in a clinical setting." (*Id.* (citing

Tr. at 762, 821-22)).  Accordingly, Plaintiff argues that Defendant's argument should

be rejected. (*Id.*).

### 2.    Applicable Legal Standards

To establish disability based on testimony of pain and other symptoms, a

plaintiff must satisfy two prongs of the following three-part test:  "(1) evidence of an

underlying medical condition; and (2) either (a) objective medical evidence

confirming the severity of the alleged pain; or (b) that the objectively determined

medical condition can reasonably be expected to give rise to the claimed pain."

*Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir.

1991)).  After an ALJ has considered a plaintiff's complaints of pain, the ALJ may

reject them, and that determination will be reviewed to determine if it is based on

substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing

*Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).  If an ALJ discredits the

subjective testimony of a plaintiff, then he must "articulate explicit and adequate

reasons for doing so.  Failure to articulate the reasons for discrediting subjective

testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted).  Nevertheless, the Eleventh Circuit has stated that "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The factors an ALJ considers in evaluating a plaintiff's subjective symptoms include:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (1996); *see also* SSR 16-3p, 2016 WL 1119029, at *7 (2016) (factors nearly identical to SSR 96-7p); *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).  "A clearly articulated credibility finding with

substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

### 3.    Analysis

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but her statements concerning intensity, persistence, and the limiting effects of those symptoms was not entirely consistent with the medical and other evidence of record for the reasons he stated in his decision.  (Tr. at 24).

In so finding, the ALJ considered Plaintiff's history of lymphoma and noted that "[s]he denied any fever, night sweats, abdominal pain, or gastrointestinal symptoms."  (*Id.* (citing Tr. at 614)).  Additionally, the ALJ noted that while undergoing chemotherapy, Plaintiff "complained of fatigue, tiredness, muscle cramps, insomnia, and anxiety, but her tolerability of treatment was well otherwise and she showed significant interval improvement in disease status consistent with good response to treatment" and ultimately went into remission in June 29, 2017.  (*Id.* (citing Tr. at 746, 787, 791, 793)).

As for Plaintiff's degenerative joint disease of the bilateral knees and right ankle and degenerative disc disease of the lumbar spine, the ALJ noted that Plaintiff's symptoms improved with the use of cold packs and her "examination[s] showed normal range of motion, full motor strength in all extremities, intact sensation, negative straight leg raising, and normal gait."  (*Id.* at (citing Tr. at 551-56;

618, 708, 877, 882, 1051)).  The ALJ also noted the medical imaging evidence,

which he summarized:

> Medical imaging showed mild and minimal degenerative
> changes.  An MRI of the knees and right ankle in April 2013
> showed knee joint effusion, tissue edema, possible rupture
> baker's cyst versus sprain of the semimembranus tendon,
> and mild prepatellar bursitis.  Medical imaging of the left
> knee in 2012 showed medial meniscus tear [Tr. at 469]
> Medical imaging of the right ankle showed an old healed
> medial and lateral malleolar fractures, mild posterior tibialis
> tendinosis and tenosynovitis, and plantar fasciitis [Tr. at
> 469].  Medical imaging of the right knee showed marginal
> osteophytic spurring and minimal medial joint space
> narrowing with no effusion and no fracture [Tr. at 889].
> Medical imaging of the lumbar spine in 2014 showed L3-4,
> L4-5, and L5-Sl facet arthropathy, and transitional vertebra
> at Sl [Tr. at 469].  Medical imaging of the lumbar spine in
> September 2015 showed no significant change in multilevel
> degenerative lumbar spondylosis, and multilevel mild
> neural foraminal stenosis worst on the right at L5-Sl [Tr. at
> 497, 522-23].

(*Id.* at 25).

The ALJ continued, noting that Plaintiff was "diagnosed with mild to

moderate left knee pain, minimal to mild right ankle pain, and mild back pain," and

that while her examination showed a slow, deliberate gate with a slight limp, she did

not use an assistive devise and had no balance disturbance.  (*Id.* (citing Tr. at 820-

26)).  Additionally, the ALJ noted that although Plaintiff "had limited range of

motion of the lumbar spine, hips, and knees bilaterally, pain with range of motion of

the left knee, right ankle, and lumbosacral spine, and swelling in the right ankle," she

had "stable joints, negative straight leg raising bilaterally, full strength in the upper

and lower extremities, and no sensory deficits."  (*Id.*).

As it relates to Plaintiff's pain in general, the ALJ also pointed out that Plaintiff had relief from medication and that on medication she labeled her pain as a three out of ten. (*Id.* at 25 (citing Tr. at 954)). Additionally, he noted that "[a] physical examination showed no joint tenderness or swelling, no muscle tenderness, and no edema of the extremities." (*Id.* (citing Tr. at 992)). Similarly, the ALJ cited Plaintiff's denial of "back pain, bone pain, arthralgias, and joint swelling." (*Id.* (citing Tr. at 566, 992, 1050)).

Finally, the ALJ noted Plaintiff's obesity and considered the cumulative effects of the obesity in line with the Listings. (*Id.* at 25). In so doing, the ALJ cited Plaintiff's testimony that "her weight did not affect her ability to lift and carry." (*Id.* at 25). Further, the ALJ noted the treatment records indicating that Plaintiff generally denied shortness of breath or dyspnea on exertion. (*Id.* at 26 (citing Tr. at 787, 789, 791, 800, 823, 901)).

The ALJ then considered the medical opinions, summarized the findings, and assigned weights to each. (*Id.* at 25-27).

Finally, the ALJ considered Plaintiff's daily activities and determined that they do not support her subjective complaints. Specifically, the ALJ noted that Plaintiff "reported she was able to manage her own personal care with help occasionally, cook once a week, clean counters, and shop twice a month," that

Plaintiff worked in 2015 despite her musculoskeletal impairments, and that Plaintiff

drove her daughter to the bus station once a week.  (*Id.* at 27).[5]

Having completed that, the ALJ again summarized his step three findings:

> In sum, the above residual functional capacity assessment
> is supported by the claimant['s] degenerative joint disease
> of the knees and right ankle, degenerative disc disease of the
> lumbar spine, history lymphoma with residual effects from
> chemotherapy, and obesity.  Physical examinations showed
> tenderness of right ankle and lumbar spine and limited
> lumbar range of motion, but otherwise were generally
> unremarkable.    Likewise,  a  consultative  examination
> showed she had stable joints, negative straight leg raising
> bilaterally, full strength in the upper and lower extremities,
> and no sensory deficits.  In addition, the claimant reported
> she was doing well with pain medication.  Medical imaging
> of the right ankle, knees, and lumbar spine showed mild and
> minimal degenerative changes.    Further, the residual
> functional capacity is consistent with the opinion of the
> State agency medical consultants who also opined that
> claimant could perform a reduced range of light work.
> While the claimant did not have any mental health therapy,
> the mental limitations are supported by the claimant's pain
> symptoms,  limited  education,  and  residual  effects  of
> chemotherapy including fatigue, dizziness, and anxiety.

(*Id.* at 27 (citations omitted)).

The Court finds that the ALJ provided an in-depth analysis of Plaintiff's

subjective symptoms and considered them thoroughly in the decision.  (*See id.* at 23-

27).  The ALJ considered Plaintiff's daily activities, the nature and intensity of

Plaintiff's pain and other symptoms, any precipitating and aggravating factors, the

---

[5]  To the extent Plaintiff argues in her reply that the work reports are erroneous
because she did not work in 2016, (Doc. 24 at 64), the Court finds the argument
irrelevant.  The ALJ relied only on the records that pre-dated the alleged onset date.
(Tr. at 27).  It does not appear that Plaintiff denies that she worked in 2015.

effects of Plaintiff's medications, her treatment for her conditions, and the medical record as a whole.  The ALJ credited some of Plaintiff's subjective symptoms as evinced by the limitations in the RFC and provided clearly articulated reasons supported by substantial evidence of record to reject some of Plaintiff's other subjective symptoms.

To the extent Plaintiff attempts to argue that the ALJ did not fully consider her carpal tunnel, the Court finds this argument meritless.  Specifically, the ALJ noted several times in which the objective medical evidence noted that she had "full strength in the upper and lower extremities." (*Id.* 25-27 (citing Tr. at 522-23, 820-26, 952, 955, 958, 979-80)).  Moreover, even assuming *arguendo* that the ALJ erred in not specifically addressing the carpal tunnel in step three, it is clear he considered the complaints when he analyzed the carpel tunnel in steps two and steps four.  At step two, the ALJ concluded that:

> With regard to her carpal tunnel syndrome, the claimant was referred to a hand surgeon but she has yet to see a specialist ([Tr. at 926-51;] Testimony).   Neurological examinations were normal [Tr. at 877, 941].  A consultative examination showed no cyanosis, clubbing, or edema of the extremities, normal range of motion of the wrist and hand joints, intact hand and finger dexterity, and full grip strength bilaterally [Tr. at 820-26].   In addition, the claimant reported she was able to cook, clean counters, shop in stores and by computer for personal items and groceries, manage her personal care, care for pets, play scramble every day, and drive ([Tr. at 371-80, 821]; Testimony).

(*Id.* at 21).  Similarly, the ALJ considered it again in rejecting Plaintiff's representative's objection to the vocational expert's testimony.  (*See id.* at 29).

Specifically, the ALJ noted that while significant manipulative limitations would have eroded the occupational base, the ALJ did not impose such limitations for the same reasons he found Plaintiff's carpal tunnel was not severe.  (*Id.*).  Thus, any error in not addressing it at step three is harmless because it was fully addressed, and, therefore, fully considered, throughout the opinion.

In sum, the Court finds that the ALJ did not err in his subjective symptom determination and this determination is supported by substantial evidence. Specifically, the ALJ properly considered all the symptoms Plaintiff alleged and supported his decision not to credit the severity and persistence of such symptoms with ample and explicit reasons, supported by record citations.  Accordingly, the Court affirms on this issue.

## VI.    Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds that substantial evidence supports the ALJ's decision.  Accordingly, the Court **ORDERS** that:

1.    The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 16, 2021.

_____
Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties